In the

# United States Court of Appeals
## For the Seventh Circuit

No. 14-3435

1756 W. LAKE STREET LLC,

*Plaintiff-Appellant*,

*v.*

AMERICAN CHARTERED BANK and SCHERSTON REAL ESTATE
 INVESTMENTS, LLC,

*Defendants-Appellees*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 14 C 1869 — **Charles P. Kocoras**, *Judge*.

ARGUED APRIL 6, 2015 — DECIDED MAY 15, 2015

Before POSNER and SYKES, *Circuit Judges*, and SIMON, *Chief
District Judge*.[*]

POSNER, *Circuit Judge*. The plaintiff, a debtor in possession
in a Chapter 11 bankruptcy, brought this adversary proceed-
ing against a bank that had lent it money and an affiliate of

_____

[*] Hon. Philip P. Simon of the Northern District of Indiana, sitting by des-
ignation.

the bank, claiming that the bank (with assistance from the affiliate) had defrauded the plaintiff. A debtor in possession has the powers of a trustee in bankruptcy, 11 U.S.C. § 1107(a), including the power to sue to prevent or recapture a fraudulent transfer of property of the debtor. See § 548(a)(1)(B). The district court granted summary judgment in favor of the bank, however, so the plaintiff has appealed.

As well as defending the district court's decision on the merits, the bank challenges our appellate jurisdiction, and we'll begin there. Rule 3(c)(1)(A) of the Federal Rules of Appellate Procedure requires, so far as pertains to this case, that the notice of appeal "specify the party or parties taking the appeal by naming each one." The notice of appeal in this case is a mess. It states that "Chris Bambulas, the Defendant herein, appeals under Rule 4 of the Federal Rules of Appellate Procedure." Bambulas is not the defendant; he is the co-owner (with his wife) of the debtor-plaintiff, 1756 W. Lake Street LLC. At the bottom of the notice is printed "CHRIS BAMBULAS, Plaintiff," followed by Bambulas's signature, under which appear the words "pro se." He is no more the plaintiff than he is the defendant. Lake Street argues in its opening brief that Bambulas was appealing as its agent, but the notice of appeal doesn't say that and anyway a limited liability company, like a corporation, cannot litigate pro se or be represented in the litigation by a nonlawyer.

Although there thus were multiple violations of the federal rules, they were harmless. The function of a notice of appeal is to notify the opposing party and the trial and appellate courts of the appeal and the party taking the appeal. The notice was properly captioned—Lake Street versus the bank (the bank's affiliate was not mentioned, but is anyway

immaterial to the appeal, as we'll see)—and knowing that Bambulas was not either plaintiff or defendant the bank had to know that the appeal was by Bambulas's company, not by Bambulas himself. See *Spain v. Board of Education*, 214 F.3d 925, 929 (7th Cir. 2000) ("even though Mr. Spain was not named in the body of the notice of appeal, his 'intent to appeal is otherwise clear from the notice'"). Lake Street was between lawyers when its notice of appeal was due, and the notice that Bambulas filed achieved the purpose of a notice of appeal—to notify. And because Lake Street is represented by counsel in the appeal there is no meaningful violation of the requirement that a limited liability company be represented in litigation by a lawyer. See *United States v. Hagerman*, 549 F.3d 536, 538 (7th Cir. 2008).

Although *Torres v. Oakland Scavenger Co.*, 487 U.S. 312 (1988), had held that naming the appellant is a jurisdictional requirement for an appeal and its absence could not be excused as harmless, that decision preceded by five years a revision of Federal Rule of Appellate Procedure 3(c)(4), which now states (so far as relates to this case) that "an appeal must not be dismissed … for failure to name a party whose intent to appeal is otherwise clear from the notice." See, e.g., *Johnson v. Teamsters Local 559*, 102 F.3d 21, 29 n. 4 (1st Cir. 1996). That is this case, and so allows us to entertain the appeal even though Lake Street's name appeared only in the caption of the notice of appeal and the body of the notice named only Bambulas as the appellant. Cf. *Bowles v. Russell*, 551 U.S. 205, 210–12 (2007), which holds that deadlines established by federal rules, as distinct from deadlines established by statutes (such as 28 U.S.C. § 2107(c)), are not jurisdictional; violations can therefore be ignored when harmless. The difference in this regard between rules and statutes is the basis for

our having jurisdiction of the appeal, even though the bobble in this case concerned names rather than a deadline.

So we come to the merits. Before it went bankrupt, Lake Street was obligated to repay a $1.5 million loan made to it by American Chartered Bank (actually a pair of loans, though that's an unimportant detail) secured by a mortgage. Unable to repay, Lake Street negotiated with the bank several forbearance-to-foreclose agreements. The most important of them required Lake Street to give the deed to the mortgaged property (its only significant asset) to an escrow agent who in the event of default would give the deed to Scherston—the other defendant, an affiliate of the bank. The reason for bringing the affiliate into the picture was that the bank's charter forbids it to own real estate.

Lake Street defaulted, Scherston recorded the deed in its own name, and Lake Street now complains that the recording was a fraudulent transfer. It focuses on the deed rather than on the mortgage because it claims that the deeded property is worth more than the mortgage. But it was its own decision to give the deed to the bank (via the escrow agent and Scherston) in the event that it defaulted on the mortgage loan; it did so in order to induce the bank's forbearance to foreclose, by giving the bank additional security. There is no contention that the bank employed unlawful or unethical practices to induce Lake Street to transfer the deed, or that any unsecured creditors were harmed by the transaction—there is only one unsecured creditor in this bankruptcy, and his claim is worth less than a thousand dollars. We therefore don't understand the contention that the transfer of the property was fraudulent.

At the time that Lake Street agreed to place its deed in escrow (the first step on the road to the deed's eventual transfer to the bank's affiliate), the property may have been worth $1.7 million. That is Lake Street's contention, at any rate, and let's assume it's true. Lake Street could have allowed the bank to foreclose the mortgage. The foreclosure sale would have yielded Lake Street, if its valuation of the property is correct, $200,000 (the difference between the property's value—$1.7 million—and Lake Street's $1.5 million debt to the bank, which the bank would collect by foreclosing). If instead Lake Street placed the deed in escrow, then while it would risk losing the $200,000 because the bank would now own the property rather than being entitled just to the payment of Lake Street's debt to it, Lake Street would be continuing to use the property in its business with the hope (which may have come to pass, as we'll see) that the use would yield it income greater than $200,000, and even (as we'll also see) that it might keep the property.

So why did Lake Street file for bankruptcy? The only reason that comes to mind is that the Bankruptcy Code allows a trustee in bankruptcy (and therefore, as we noted at the outset of this opinion, a debtor in possession) to avoid a transfer of the debtor's property if, so far as concerns this case, the debtor "received less than a reasonably equivalent value in exchange for such transfer … and was insolvent on the date that such transfer was made or such obligation was incurred." 11 U.S.C. §§ 548(a)(1)(B)(i), (B)(ii)(I). That describes Lake Street's contention, and so the case is an avoidance action misnamed. Lake Street argues that because it obtained an appraisal of the property for $1.7 million yet owed the bank only $1.5 million, the $200,000 difference demonstrates

that Lake Street "received less than a reasonably equivalent value in exchange" for giving its deed to the bank's affiliate.

As an original matter one might think that having given up its deed to the property to avoid foreclosure, thus gambling that the property might eventually be worth even more than it was thought to be worth—and if it was worth more than Lake Street's mortgage debt the surplus would accrue to the bank as owner of the property by virtue of having acquired the deed—Lake Street has no ground to stand on. But the parties agree, rightly or wrongly, that the transfer of the deed was intended merely as a substitute for foreclosure—that it was not intended (any more than foreclosure would be intended) to yield the bank a "profit," which is to say a value in excess of the $1.5 million that Lake Street owed the bank. Claiming that the property is worth $1.7 million, Lake Street wants it back, thus changing the bank's remedy from owning (and doubtless selling) the property to foreclosing its mortgage and collecting its $1.5 million debt at the foreclosure sale.

The bank ripostes that even if Lake Street's appraisal is sound, $1.5 million is 88 percent of $1.7 million and so by being forgiven its $1.5 million debt to the bank Lake Street has received the statutory "reasonable equivalent" of the value of the property. The bank further argues, on the basis both of its own appraisal and of a purchase offer that it received, that the property is actually worth only $1.3 million. And finally it argues that the various forbearances that it granted to Lake Street, including loans to Lake Street affiliates, repeated extensions of the maturity date of the bank's loan, and reductions in monthly payments and interest rates on the loan, were worth at least $200,000 to Lake Street and

therefore closed the gap between the $1.5 million in debt forgiveness (for with the property in the bank's hands, and assuming it's worth $1.5 million and not the $1.3 million argued by the bank, the bank is being repaid in full) and the $1.7 million that Lake Street claims the property is worth.

The bank's first argument is no good. Reasonably equivalent should be understood to mean not part payment but that the debtor received or will receive value for the property that he transferred that is as close to true equivalence as circumstances permit. Evidence of reasonable equivalence in this case includes the fact that both parties were sophisticated business firms negotiating in good faith and at arms' length, so that a disparity in the value of the deal to each party may have stemmed from uncertainty or disagreement about the value of the property rather than from sharp practices by the bank.

As for the bank's second argument, concerning the conflict in appraisals, the record compiled in the summary judgment proceeding (for there has yet to be a trial) does not permit a confident inference as to which appraisal is more accurate. Real estate appraisal is not a science, and each party doubtless hired an appraiser who it had reason to believe would provide an appraisal favorable to it. We also know nothing about the purchase offer that the bank claims to have received—whether for example the offerer had the financial wherewithal to close the deal.

But the bank's third argument—that it gave at least $200,000 worth of forbearances to Lake Street—is solid, despite the scantiness of the briefs and record, which leaves us with an imperfect understanding of the transactions between the parties. The mortgage loan had been issued in 2006 in the

amount of $1,400,000. The bank had lent Lake Street another $100,000 in 2008. By 2013, $1,500,000 was due on the combined loans. But Lake Street must have missed payments required by the mortgage (such as payment of real estate taxes), or otherwise courted default, earlier. For beginning in 2009 and ending in 2013 (which was when it defaulted and the deed was given by the escrow agent to the bank), it negotiated no fewer than eleven forbearance agreements with the bank, agreements that by easing the repayment terms of the loans kept Lake Street out of bankruptcy for the next four years. The agreements also provided additional loans to Lake Street's affiliates of $650,000, though the bank received, besides the deed, some guarantees from affiliates of Lake Street and the Bambulases, along with other consideration designed to ensure repayment. The other consideration included, among other things, a perfected security interest in certain assignments of rent, the listing of an affiliate's property for sale, the requirement that all bank accounts of Lake Street and its affiliates be at American Chartered Bank, an agreement that Lake Street would pay all mortgage and tax-related liabilities before paying its own operating expenses, and a blanket release of the bank from any liabilities to Lake Street that the bank might have incurred up to the date of the agreement.

Lake Street points out that the benefits of the forbearance agreements to it and to the bank were not quantified and so cannot be compared for purposes of determining whether Lake Street received less than equivalent value for giving up its property to the bank's affiliate. It argues that the bank's failure to quantify them is fatal to the defense of reasonable equivalence. But reasonable equivalence is not a defense. As the plaintiff, Lake Street had the burden of proof, and sought

to carry it only by getting an appraisal of its property. And that appraisal—its own appraisal—even if thought impeccable, exceeded the debt forgiveness (having received the property securing its mortgage, the bank had no further claim to Lake Street's repaying its loan) by only $200,000. If the value it derived from the forbearance agreements and related concessions from the bank equaled or exceeded that number, Lake Street ended up where it wanted to be. It must have known what benefits it derived from the bank's concessions, yet it failed to quantify them. All we know is that the bank's concessions kept its debtor in business for four years, and that Lake Street's Statement of Financial Affairs lists gross income of $129,413 in 2011, $167,000 in 2012, and $139,333 in 2013—three of the four years of extended life that the bank gave it. The total, $435,746, though incomplete because of the missing year, is more than twice the amount by which its appraisal of its property exceeded the bank's.

It remains to note the oddity that an almost identical case is pending in the same district court, though before a different judge. That case is *1800 W. Lake Street, LLC v. American Chartered Bank & Scherston Real Estate Investments, LLC*, No. 14 C 420 (N.D. Ill.). 1800 W. Lake Street is another building owned by an LLC owned by Chris Bambulas (and one other person) and financed by American Chartered Bank. The case involves a similar series of forbearance agreements culminating in a transfer of the deed to that property to the bank after a default, and a fraudulent transfer action by the debtor in possession (1800 W. Lake Street, LLC). The case is a little behind this one in time, and when the judge ruled on the defendants' motion for summary judgment in that case he had the benefit of the district court's opinion in this one. But he denied summary judgment in December of last year,

distinguishing the present case on the ground that in his case the spread between the discharged debt and the plaintiff's appraisal was "greater by several orders of magnitude" than in the present case. That is not technically correct, of course. An order of magnitude is a multiple of 10. One order of magnitude raises $200,000 to $2 million, two orders of magnitude raise it to $20 million, and three orders (the smallest number that one would refer to as "several") to $200 million. Nevertheless the spread between the plaintiff's appraisal and the discharged debt in the *1800 W. Lake Street* case is significantly greater than in the present case: it is the difference between $2,710,000 (the plaintiffs' appraisal) and $1,780,000 (the discharged debt), which is $930,000—that is a lot more than the $200,000 spread in this case though not orders of magnitude greater.

Still, the cases are very similar and arguably intertwined, and it is surprising that they were not consolidated in the district court, especially since the two bankruptcies are being handled by the same bankruptcy judge. Overlap is possible, for example if the bank in the ongoing proceeding concerning 1800 West Lake Street argues that the forbearances granted the Bambulases with regard to the property in our case also benefited them with regard to the other property. That would hurt 1800 W. Lake Street LLC's avoidance case. The issue is not argued in our case, however, and we leave it to the district court in the 1800 W. Lake Street case to sort out.

AFFIRMED